IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER WELCH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | NO. 5:10-CV-43 (MTT) |
| | : | |
| FLORENCE VALENTINE, | : | |
| | : | Proceedings under 42 U.S.C. § 1983 |
| Defendant, | : | Before the U.S. Magistrate Judge |
| _____ | : | |

**RECOMMENDATION**

Before the Court is Defendant Florence Valentine's Motion for Summary Judgment. Doc. 45. In lieu of filing a response to Defendant's motion, Plaintiff Christopher Welch filed an opposing Motion for Summary Judgment. Doc. 47. Because Plaintiff has failed to demonstrate a genuine issue of material fact, and because Defendant is entitled to judgment as a matter of law, it is hereby **RECOMMENDED** that Defendant's Motion for Summary Judgment be **GRANTED** and that Plaintiff's Motion for Summary Judgment be **DENIED**.

PROCEDURAL HISTORY

On January 29, 2010, Plaintiff, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 against various prison officials and medical staff members alleging deliberate indifference to his serious medical needs while Plaintiff was incarcerated at Men's State Prison from 2008 through 2009.[1] Doc. 1. Specifically, Plaintiff alleges that Defendant Valentine refused to assist Plaintiff with the insertion of suppositories pursuant to a "bowel program" ordered by his physician. Plaintiff also contends that Defendant Valentine retaliated against Plaintiff by

---

[1] Plaintiff has since completed his sentence and is no longer incarcerated. Doc. 39.

1

placing an "out of order" sign on the bathroom door and locking the bathroom when in fact the bathroom was functioning at the time.

On September 20, 2010, Defendants Alexis E.L. Chase, Sandra Abrams, Calvin Ramsey, and Lisa P. Thomas filed a Motion to Dismiss. Doc. 28. On June 14, 2011, the Court issued a Recommendation to grant Defendants' Motion to Dismiss because Plaintiff's claims against those defendants were solely based on the theory of respondeat superior. Doc. 42. On August 26, 2011, the Recommendation was adopted and Defendants Chase, Abrams, Ramsey, and Thomas were dismissed as defendants. Doc. 44.

On September 21, 2011, Defendant Valentine filed a Motion for Summary Judgment. Doc. 45. Rather than filing a response to Defendant's motion, Plaintiff filed an opposing Motion for Summary Judgment on October 27, 2011. Doc. 47.

## FACTUAL BACKGROUND

Construed in a light most favorable to Plaintiff, the facts of the case are as follows: Plaintiff is a quadriplegic confined to a wheelchair due to a spinal cord injury. Doc. 1. Because a spinal cord injury may damage the defecation reflex and relax the anal sphincter muscle, Plaintiff was placed on a "bowel program" while at MSP. Id.; Ramsey Aff. (Doc. 45-5). Part of the bowel program requires the use of suppositories. Doc. 1. Plaintiff alleges that because he has little to no use of his hands and fingers, Dr. Jackson ordered that a nurse assist him with the manual insertion of the suppository as part of his bowel program. Id. Plaintiff contends that from September 2008 until December 2009, Defendant refused to assist him with the insertion of his suppositories. Plaintiff further alleges that Defendant retaliated against him by placing an "out of service" sign on the handicapped bathroom in the medical area when in fact the bathroom was

functioning. Plaintiff alleges that he suffered pain, nausea, vomiting, and rectal bleeding as a result of Defendant's actions.

Plaintiff's medical records show that his treating physician, Dr. Jackson, ordered that Plaintiff self-administer his suppositories during most of the time period that Plaintiff alleges that Defendant refused to do so. See Def. Exhibits A-F (Docs. 45-6 to 45-11). On two occasions, Dr. Jackson's orders changed from self-administer to "nurse assist." Id. Dr. Jackson ordered nurse-assisted administration for 30 days beginning on October 1, 2008 and for 120 days beginning June 9, 2009. Def. Exhibits C, E (Docs. 45-8, 45-10). According to Dr. Jackson's orders, "nurse assist" required a nurse to assist with the insertion of the suppository only when the patient requested that the nurse do so. Def. Exhibit C (Doc. 45-8). Plaintiff's medical records also show that Plaintiff's bowel treatments were performed during the evening shift at approximately 5:30 p.m. Def. Exhibit J (Doc. 45-15).

Defendant is a Licensed Practical Nurse (LPN) with a total of 38 years of experience in the nursing profession. Def. Aff. (Doc. 45-3). Defendant worked at MSP for four years prior to her retirement in 2009. Id. Defendant states that she worked the morning shift, 6:00 a.m to 2:00 p.m., during the time period that Plaintiff alleges that she refused to assist him. Id. Although Defendant also often worked overtime shifts in the evenings during that time period, she was never the treatment nurse when she worked overtime. Id. The treatment nurse is the nurse on duty for a particular shift who would perform all hands-on patient duties including monitoring patients, changing dressings, treating wounds, and providing general treatment ordered by the doctor in charge. Id.

DISCUSSION

Plaintiff alleges two claims against Defendant: (1) that Defendant was deliberately indifferent to Plaintiff's serious medical needs by refusing to assist Plaintiff with the insertion of his suppositories, and (2) that Defendant retaliated against Plaintiff by placing an "out of order" sign on and locking a handicapped restroom in the medical area when the bathroom was in working order. Plaintiff has failed to show that are genuine issues of material fact regarding Defendant's alleged failure to assist Plaintiff with his bowel treatment or Defendant's alleged locking of the bathroom. Because record indicates that Defendant was not responsible for Plaintiff's bowel treatment on the dates alleged, and because the record indicates that Defendant did not retaliate against Plaintiff, Defendant is entitled to judgment as a matter of law.

1. Deliberate indifference to Plaintiff's serious medical needs

Plaintiff makes a general allegation that Defendant failed to assist him with the insertion of his suppositories from September 2008 through December 2009. Because Plaintiff's medical records indicate that Plaintiff's treating physician ordered Plaintiff to self-administer his suppositories for the majority of this time period, and because Defendant was not the treating nurse during the shifts that Plaintiff was to receive his suppositories, Plaintiff's claim against Defendant is without merit. Additionally, Defendant is entitled to qualified immunity from Plaintiff's deliberate indifference claim.

To create genuine issues of material fact, Plaintiff must point to evidence that Defendant was deliberately indifferent to Plaintiff's serious medical needs. The Eighth Amendment prohibits cruel and unusual punishment, including deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999). To show deliberate indifference, the prisoner must satisfy both an objective and a

subjective component. Campbell, 169 F.3d at 1363. With regard to the objective component, a prisoner must allege both an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm, and also that the response by the prison official to that need was poor enough to constitute an unnecessary and wanton infliction of pain. Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). With respect to the subjective component, a prisoner must allege, and ultimately prove, three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and, (3) by conduct that is more than mere negligence. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

It is not enough, then, to show that the care provided was less than optimal, or that a different course of treatment might have been preferable. The elements required to prove the subjective component of a deliberate indifference claim establish that "mere accidental inadequacy, negligence in diagnosis or treatment, [and] even medical malpractice" are not actionable under 42 U.S.C. § 1983. Taylor, 221 F.3d at 1258. A prisoner cannot establish a violation simply because he "may have desired different modes of treatment" than that which was provided to him. Hamm v. DeKalb County, 774 F.2d 1567, 1576 (11th Cir. 1985). Such course of treatment claims, by definition, involve the "exercise of professional judgment" and as such are not actionable. Estelle, 429 U.S. at 105. Additionally, a nurse is not deliberately indifferent when she reasonably follows a doctor's orders. Bauer v. Kramer, 424 Fed. Appx. 917, 919 (11th Cir. 2011).

In this case, Plaintiff's medical records indicate that Defendant was not deliberately indifferent to Plaintiff's serious medical needs. In contradiction to Plaintiff's claim that his treating physician ordered a nurse to insert his suppositories, Plaintiff's medical records show that Plaintiff was expected to self-administer the suppositories during the majority of the time

period relevant to the Complaint. Plaintiff's contentions that he had little use of his hands and fingers are also rebutted by the physician's determination that he was able to self-administer the suppositories as well as the fact that Plaintiff manually operated his wheelchair. On the two specific occasions that Plaintiff alleges that Defendant denied him assistance, September 5, 2008 and February 16, 2009, the physician's orders show that Plaintiff was to self-administer his suppositories on those dates.

Plaintiff has also failed to show that he was denied necessary treatment by Defendant during the time periods where the physician ordered that a nurse assist Plaintiff with his suppositories when necessary. There is nothing in Plaintiff's medical records to indicate that he continually complained of an inability to self-apply his suppositories as he alleges. On the single incident that Plaintiff complained of difficulties with his suppositories, he was placed on nurse assist. Defendant, however, was not the treating nurse during the evening shift when Plaintiff would have required nurse assistance. The physician's orders required that Plaintiff specifically request assistance. As such, Plaintiff's request would have been necessarily directed toward the evening treating physician, not toward Defendant. Moreover, Plaintiff's medical records indicate that he specifically refused treatment from Defendant on fourteen different occasions, contradicting Plaintiff's allegations that he requested assistance from Defendant but was denied. See Def. Exhibit I (Doc. 4514).

Plaintiff has also failed to show that he was harmed as a result of the alleged refusal to provide assistance with his suppositories. Plaintiff's medical records are void of any indication that Plaintiff suffered an injury as a result of his alleged inability to insert the prescribed suppositories. Plaintiff alleges that he suffered from intense pain, nausea, and rectal bleeding. There is no indication in Plaintiff's medical records that Plaintiff complained of any of these

6

symptoms. Plaintiff has not presented any verifying medical evidence that he was adversely affected by his alleged failure to receive assistance. See Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176 1188-89 (11th Cir. 1994) (claims that medical procedures have been denied or delayed requires an inmate to put verifying medical evidence in the record to establish the detrimental effect of the denial of treatment) (abrogated on other grounds by Hope v. Peltzer, 536 U.S. 730, 739 (2002)). Plaintiff's unsupported allegation that his medical records are falsified is without merit.

Because Plaintiff's medical records indicate that Plaintiff was required to self-administer his suppositories for the majority of the time period relevant to his Complaint, and because the record shows that Defendant was not the treating nurse responsible for assisting Plaintiff with his suppositories, Plaintiff's has failed to establish that Defendant was deliberately indifferent to his serious medical needs.

Defendant also asserts that she is protected by qualified immunity against Plaintiff's claim of deliberate indifference. Qualified immunity protects government officials from civil liability when their conduct in performing discretionary functions "violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Lassiter v. Alabama A & M University, 28 F.3d 1146, 1149 (11th Cir. 1994) (internal quotations omitted). To determine if a defendant was performing a discretionary function, the court must look to whether the government employee was preforming a job related function through means that were within her power. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004).

As a nurse at MSP, Defendant was performing a discretionary function when she treated patients. A prison employee acting within the scope of her discretionary authority is entitled to

qualified immunity "unless the plaintiff can demonstrate: first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was 'clearly established' at the time of the incident." Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009). Courts need not consider the two prongs of the analysis in sequence, and a failure to establish either prong requires the claim to be dismissed. Id.

Leaving aside the question of whether the allegations in Plaintiff's Complaint amount to a constitutional violation, Defendant is entitled to qualified immunity because the facts alleged do not show that Defendant violated a clearly established constitutional right. Although is it clearly established that "an official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay," this general statement of law does not preclude qualified immunity in all cases alleging deliberate indifference. Bozeman v. Orum, 422 F.3d 1265, 1273-74 (11th Cir. 2005) (internal quotations omitted). Cases alleging deliberate indifference "are highly fact-specific and involve an array of circumstances pertinent to just what kind of notice is imputed to a government official and the constitutional adequacy of what was done to help and when." Id. "Most cases in which deliberate indifference is asserted are far from obvious violations of the Constitution." Id.

Even if Defendant refused to assist Plaintiff with the insertion of his suppositories, there is no clearly established law holding that a non-treating nurse must assist with medical treatments upon the request of an inmate in a non-emergency situation. Accordingly, Defendant is protected by qualified immunity against Plaintiff's claim that she was deliberately indifferent to his serious medical needs.

8

2. Retaliation

Plaintiff also alleges that Defendant retaliated against him by denying him access to the handicapped bathroom in the medical area by placing an "out of order" sign on and locking the bathroom door when the bathroom was functioning. Because Plaintiff has failed to present sufficient evidence that Defendant placed a sign on the door or locked the door in order to retaliate against Plaintiff, Plaintiff's retaliation claim is without merit.

Plaintiff has failed to put forth evidence to support his claim that Defendant retaliated against him. "Because claims of retaliation may be easily fabricated, they should be reviewed with skepticism." Gross v. White, 2008 WL 2795805 at *8 (M.D.Fla. July 18, 2008), aff'd 340 F. Appx. 527 (11th Cir. 2009). To prevail on a retaliation claim, a plaintiff must establish three elements: (1) that the speech was protected; (2) that he suffered adverse action such that the alleged retaliatory conduct would likely deter a person of ordinary firmness from engaging in the protected activity; and (3) that there is a causal relationship between the retaliatory action and the protected activity. Smith v. Mosely, 532 F.3d 1270, 1276 (11th Cir. 2008). "A prisoner must show more than his personal belief that he is the victim of retaliation." Gross, 2008 WL 2795805 at *8 (citing Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995)).

In this case, Plaintiff has failed to show more than his personal belief that he is the victim of retaliation. Plaintiff asserts that he "heard" that Defendant instructed orderlies to place an "out of order" sign on the bathroom door out of spite toward Plaintiff. Defendant states that she recalls a time when the bathroom in medical was out of order, but that she was not responsible for making maintenance decisions at MSP. Def. Aff. (Doc. 45-2). MSP had a maintenance staff that made decisions regarding the working order of the bathrooms. Id. Because Plaintiff has

9

merely shown his personal belief that he is the victim of retaliation, Plaintiff's retaliation claim against Defendant is without merit.

## CONCLUSION

Because the evidence in the record of this case is insufficient to permit a finding that Defendant was deliberately indifferent to Plaintiff's serious medical needs and that Defendant retaliated against Plaintiff, it is hereby **RECOMMENDED** that Defendant's Motion for Summary Judgment be **GRANTED**. It is further **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**. Pursuant to 28 U.S.C. § 636 (b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom the case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 13th day of July, 2012.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge